UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| C.B.M. (XXX-XX-3645) | CIVIL ACTION NO. 12-cv-2364 |
| VERSUS | JUDGE STAGG |
| SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

C.B.M. ("Plaintiff") was on duty as a patrol officer for the Fort Stockton Police Department in 1984 when he was run down by a car driven by a fleeing suspect at a speed of approximately 70 miles per hour.  The impact literally knocked Plaintiff out of his boots and flung him into the air and over the vehicle.  Witnesses believed he was killed.  He actually suffered no broken bones was hospitalized for internal bruises, as well as painful cuts and bruises over most of his body, and he spent almost a year recuperating from torn ligaments in a leg before returning to the police department.

Plaintiff quit the job in 1990; he states that he could not perform its demands.  Plaintiff was supported by his father for many years. After the father died, Plaintiff lived off an inheritance, but it began to run out.  Plaintiff filed an application for disability benefits in 2010 based on an alleged onset date of January 1, 1993.  Plaintiff last met the insured status requirements on December 31, 1995, so it is his condition from 1993 through 1995, and not his current condition, that is at issue in this case.

ALJ Stephen C. Graalmann conducted a hearing and issued a written decision that found Plaintiff was not disabled. Tr. 14-19. Plaintiff presented his case to the Appeals Council, where he submitted additional evidence including a letter from the orthopedic surgeon who treated him after the accident. The Appeals Council wrote in a summary fashion that it had considered the additional evidence but found it did not provide a basis for changing the ALJ's decision. Tr. 3-5. Plaintiff now seeks the limited judicial review that is available under 42 U.S.C. § 405(g). For the reasons that follow, it is recommended that the Commissioner's decision to deny benefits be reversed and the case be remanded for further proceedings.

**Issues on Appeal**

Plaintiff lists four issues on appeal. He complains that the Commissioner did not: (1) properly consider and evaluate the new evidence that was submitted to the Appeals Council; (2) properly assess Plaintiff's severe impairments at step two of the five-step evaluation process; (3) properly assess Plaintiff's credibility; or (4) give any consideration to the testimony of Plaintiff's brother or the opinion of a vocational rehabilitation specialist.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925

F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Summary of the ALJ's Decision**

The ALJ analyzed Plaintiff's claim under the five-step sequential analysis established in the regulations. It requires the ALJ to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

The ALJ found at step one that Plaintiff did not work between his alleged onset date of January 1, 1993 and his last insured date of December 31, 1995. At step two, deciding whether a claimant suffers from severe impairments, the Fifth Circuit holds that an impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985). The ALJ found only a single severe

impairment: status post-right acromioclavicular orthroplasty. This referred to a 1986 surgery to repair chronic rotator cuff tendinitis related to the 1984 accident. Tr. 128-34. The ALJ found at step three that Plaintiff did not meet or equal a listed impairment; this is not challenged.

    Before proceeding to steps four and five, the ALJ determined Plaintiff's residual functional capacity ("RFC"), which is the most the claimant can still do despite his limitations. 20 C.F.R. § 404.1520(a)(4). The ALJ found that Plaintiff could perform the full range of sedentary work, which involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. A sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties. A job is sedentary if walking and standing are required occasionally (up to a total of 2 hours per workday) and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a); Social Security Ruling 83-10.

    The ALJ found at step four that Plaintiff could not perform the medium level demands of his past relevant work as a patrolman and emergency medical technician. He then turned to step five. If a claimant can perform all of the exertional demands of work at a given level (such as sedentary), the Commissioner may meet his burden of proof by looking to the Medical Vocational Guidelines found in the regulations. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987). Plaintiff was found to have the ability to perform the full range of sedentary work, so the ALJ looked to Rule 201.28. That rule states that a person who can perform sedentary work is not disabled if he is a younger individual age 18 to 44 (as Plaintiff

was during the relevant period), has a high school or better education, and has skilled or semi-skilled work experience. The ALJ thus found that Plaintiff was not disabled.

**The Evidence**

There were, as the ALJ wrote, virtually no medical records available for treatment before 1995. The only medical evidence that showed treatment between the 1984 accident and the expiration of insured status in 1995 was regarding the shoulder surgery in 1986. There was, however, testimony from Plaintiff and his brother at a hearing.

Plaintiff testified that he completed two years of college and graduated from an El Paso police academy before going to work in 1980 as a patrolman for the west Texas town of Fort Stockton. Plaintiff said that he was on a form of medical leave for about two years after the accident, with worker's compensation benefits and the police department paying him a combined amount to give him a full paycheck. When he returned to work, he tried to do patrol duty, but he would get hurt easily if trying to make an arrest or deal with a prisoner. The police department tried to help by giving him light jobs such as registering bicycles or answering telephones so that he could maintain his job. That continued until 1990 when a new chief of police came in and persuaded Plaintiff to resign because he was unable to perform the demands of the job and could not support his co-workers if they needed help with an arrest or similar situation. Tr. 306-09.

Plaintiff enrolled in the University of Texas at El Paso with thoughts of getting an education to perform another line of work. That attempt ended after about a year. Plaintiff testified that he just could not sit through a class without suffering so much pain that he could

not concentrate. Plaintiff had worked as a paramedic before becoming a police officer. After his college effort ended, he tried to get his foot in the door to another job by working without pay for an ambulance service. He was, however, unable to lift the stretchers without his back hurting. He also applied for security guard jobs, but no one would hire him because of his injuries and prior filing of a worker's compensation claim. Tr. 309-11.

Plaintiff testified that the 1986 surgery, two years after the accident, was performed by a Dr. Zaltz to repair his shoulder that had gone through the windshield of the car that struck him. Plaintiff said the surgery helped. He said that he first started having back problems "right after the accident" but did not have his first back surgery until 2001 (years after insured status ended). Plaintiff testified that, between 1990 and 1995, he had pain in his legs and lower back and had memory problems related to a closed head injury suffered during the accident. Tr. 311-13. Plaintiff testified that in 1995 and earlier, he could stand 5 or 10 minutes at a time, and then did so by leaning against a wall or object for support. He said that when the car struck him it shattered both legs. There was not a clean break, but a bone scan reportedly showed that his legs looked like spider webs. Plaintiff said he was told that if he fell and broke his leg, he could require an amputation. He said he also had a real problem with balance during that time. He estimated that in the 1990 to 1995 era, he could sit normally for about 15 minutes before he would need to get up and move around. He estimated that he could stand for the same time, for a total of perhaps an hour and a half per day. He estimated his sitting ability as the same. Plaintiff testified that he was told while in the hospital that elevating his legs would help with the pain, and he often did so with the help

of a pillow, which also took pressure off his back. Plaintiff testified that he continued that practice today. Tr. 315-17.

Plaintiff testified that his pre-1995 medications were Vicodin and Hydrocodone. He said the medications had side effects such as making him tired and confused, and they made his balance worse. He nonetheless took the drugs because they did relieve some of his pain. He also tried a number of different anti-seizure medications and the like as doctors attempted to alleviate his pain. Tr. 317-18.

Plaintiff's older brother testified that Plaintiff was very active and loved the outdoors before his accident. He said that Plaintiff had been "kind of a local hero" after the accident and that the police department kept him on the job even though he really did not do anything. He testified that Plaintiff's pain seemed to dissipate some after the accident but came back pretty strong during the time he was trying to go to school. The brother was asked if, during the time from 1990 to 1995, Plaintiff was able to stand, walk, or sit without problems. He said that he saw Plaintiff two or three times during those years. Plaintiff would try to walk to check on a nearby house that was about 50 yards away. That was as far as he could go, and the next day he would be in severe pain. The brother also corroborated Plaintiff's testimony that he elevated his legs during that time to address the pain. Tr. 321-27.

Plaintiff and his brother both testified that their father was an attorney who emphasized to them to be self-sufficient. The combination of this and coming from an affluent family made Plaintiff too proud to apply for disability benefits, food stamps, or other forms of assistance until all other resources were exhausted.

Richard Galloway, Ph.D., is a licensed rehabilitation counselor. He interviewed Plaintiff and his wife in 2011 and issued a lengthy report regarding Plaintiff's medical history and abilities. The discussion includes mention of six lumbar surgeries, a cervical surgery, and carpal tunnel surgery, but all of those were after insured status ended. The report also reflects Plaintiff's current abilities, but it is his condition between 1993 and 1995 that is relevant here. Dr. Galloway concludes that there is no way Plaintiff could sustain work in his current condition. Tr. 105-09.

The ALJ noted the lack of medical records prior to 1995 that confirmed any injuries beyond those reflected in the shoulder surgery report. He also stated that a claimant's testimony cannot establish the existence of an impairment. Tr. 18. The regulations do require that an impairment result from abnormalities "which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." Id. "Your statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528(a). There were no medical records presented to the ALJ that would document impairments other than the shoulder problem. That problem would not prevent the performance of sedentary work.

After the ALJ issued his decision, Plaintiff gathered and submitted additional evidence for consideration by the Appeals Council. Most important, Plaintiff was able to locate Dr. Charles Zaltz. The orthopedic surgeon wrote that he first treated Plaintiff in 1984 after the

accident in which Plaintiff "suffered injuries to his neck and back as well as his left shoulder." Dr. Zaltz said that he specifically looked after the left shoulder at that time. He recalled that after Plaintiff returned to work he continued to have pain in the shoulder "but more importantly he developed very severe low back pain that required surgery." There had been four operations on the lower back since the time of the accident, with each one producing increasing disability and pain. Dr. Zaltz did not specify the dates of those surgeries, nor did he give the dates of the carpal tunnel surgeries and spinal fusion that he also mentions in the report. Other evidence, however, indicates that those events happened after insured status ended. Dr. Zaltz wrote that Plaintiff is now disabled from the injuries to his shoulder and back, given that he would be unable to sit or walk for any significant length of time. Dr. Zaltz said the medical records for the treatment were no longer available, but he remembered Plaintiff "very well." Tr. 264-65.

**Analysis**

Plaintiff complains that the Commissioner, specifically in the Appeals Council, did not adequately consider the report from Dr. Zaltz. He makes related arguments that the Commissioner erred when he did not find evidence of impairments other than the shoulder issue, and did not properly assess the credibility of testimony from Plaintiff and his brother that Plaintiff suffered serious back and leg pain, side effects from medication, and other problems that could be impairments that would prevent performing the full range of sedentary work.

The Commissioner's final decision, the decision that is to be reviewed by the courts, includes the Appeals Council's denial of a request for review and requires the court to consider (in determining whether there is substantial evidence to support the decision) evidence that was submitted for the first time to the Appeals Council. Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005). The undersigned has taken the position that it "is not appropriate to automatically reverse merely because the Appeals Council failed to explain the weight it afforded evidence first presented to it." Metcalf ex rel. ANM v. Commissioner, 2009 WL 5174368, *5 (W.D. La. 2009). It may be unrealistic to expect the overburdened Appeals Council to give detailed reasons in all of the many such cases presented to it, but a lack of reasoning behind the Agency's final decision may leave the court guessing in some cases as to the Agency's rationale, which makes it difficult for the court to fulfill its limited role of reviewing the Agency decision for substantial evidence. Id.

When the Commissioner has failed to address a significant line of evidence, the undersigned has sometimes reversed and remanded so that the court would not be put in the position of weighing the overlooked evidence and in effect deciding the case de novo. See, e.g., GST v. Commissioner, 2009 WL 3031678 (W.D. La. 2009). See also Audler v. Astrue, 501 F.3d 446 (5th Cir. 2007) (reversing when ALJ failed to state any reason for adverse determination at step three despite evidence to support the claim). The court has not, however, reversed in such cases unless the omission was so significant as to prevent effective judicial review or deprived the agency decision of substantial supporting evidence.

This case falls into the category where reversal and remand is required. The ALJ's decision was based largely on the absence of medical evidence to support the testimony of Plaintiff and his brother that, during the relevant time, Plaintiff suffered severe back and leg pain in addition to the shoulder problems reflected in the scant medical evidence available to the ALJ. When the case was presented to the Appeals Council, however, the record included new evidence from Plaintiff's treating physician that the accident also caused "severe injuries" to the lumbar spine and neck related to the initial injury and caused very severe low back pain. It may be that Plaintiff did not have surgery to address the back issues until after his insured status expired, but that does not rule out the existence of limitations stemming from back injuries existing during the relevant period.

Plaintiff gave fairly detailed testimony about his condition prior to 1996, and he suffered a tremendous trauma that could easily have caused those and even greater limitations. It appears it was the lack of medical records corroboration that defeated the claim in the eyes of the ALJ. When such potential corroborating medical evidence was presented to the Appeals Council, it said only that it had "considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council" but found the information "does not provide a basis for changing the Administrative Law Judge's decision." There was no specific discussion of the evidence. The report from Dr. Zaltz lends support to Plaintiff's otherwise unchallenged testimony that he had limitations other than those associated with his shoulder, and those other limitations, if credited, could reasonably result in an RFC that would not permit a full range of sedentary

work. The ALJ's decision relied heavily on the lack of medical evidence of such other impairments, so it was critical that the Commissioner address such evidence when it was presented. Under these circumstances, the court cannot say there is substantial evidence to support the Commissioner's decision.

On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand). Plaintiff of the Agency may wish to obtain from Dr. Zaltz a more detailed report that focuses his attention of the injuries and impairments that he believes Plaintiff would have had during the relevant period from 1993 through 1995. Plaintiff's testimony about the side effects (tiredness, confusion, and impaired balance) caused by his pain medication during those years should also be addressed.[1]

---

[1] The regulations require the Commissioner to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take [s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv). See Crowley v. Apfel, 197 F.3d 194, 199 (5th Cir.1999). Limitations caused by side effects must be taken into consideration when determining whether a claimant is disabled. The absence of a direct discussion of a claim a side effect, which could be a significant non-exertional impairment, may deprive the agency decision of substantial evidence to support it and preclude an informed appellate review. C.A.B. v. Astrue, 2009 WL 3156544 (W.D. La. 2009).

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be reversed and, pursuant to sentence four of 42 U.S.C. § 405(g), this case be remanded to the Commissioner for further proceedings.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 19th day of September, 2013.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE